**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**AIKEN DIVISION**

| | | |
|---|---|---|
| Shannon DeVante Cooper, | ) | Civil Action No.: 1:20-cv-04185-JMC |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Warden Michael Stephan, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Shannon DeVante Cooper filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) This matter is before the court for review of the Magistrate Judge's Report and Recommendation ("Report") filed on April 15, 2021, recommending the Petition be dismissed with prejudice. (ECF No. 13.) The Report concludes Petitioner did not meet his burden to show the state post-conviction court ("PCR Court") unreasonably applied clearly established federal law or unreasonably determined the credibility of the evidence before it. (ECF No. 13 at 29-30.) Therefore, the Report found Petitioner did not meet his burden under § 2254 and recommended Respondent Michael Stephan's ("Respondent") Motion for Summary Judgment (ECF No. 8) be granted while Petitioner's Petition be dismissed with prejudice. For the reasons set forth below, the court **ACCEPTS** the Report (ECF No. 13), **GRANTS** Respondent's Motion for Summary Judgment (ECF No. 8) and **DISMISSES** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) with prejudice.

## I.    RELEVANT BACKGROUND

The Report sets forth the relevant facts and legal standards, which this court incorporates herein without a full recitation. Petitioner was indicted in November 2013 for first-degree burglary

1

and kidnapping.[1]  (ECF No. 13 at 1-2.)  Petitioner was represented on these charges by J. Eric Fox, Esq. ("Plea Counsel").  (*Id.* at 2.)  On April 20, 2015, Petitioner pled guilty to burglary and kidnapping and was sentenced to a concurrent 22-year sentence for each charge.  (*Id.* at 2.) Petitioner filed a timely notice of appeal which was denied on the basis that Petitioner "failed to provide a sufficient explanation as required by Rule 203(d)(1)(B)(iv) of the South Carolina Appellate Court Rules."  (*Id.* at 2.)

On March 22, 2018,[2] Petitioner, through counsel, filed an amended application for post-conviction relief ("PCR") in state court, alleging he received ineffective assistance of counsel. (ECF No. 7-1.)  Petitioner argued, in part, that Plea Counsel:

> "failed to timely communicate with Applicant of formal plea offer prior to the lapse/expiration of formal plea offer . . . . The formal plea offer was required to be accepted by February 28, 2014 or it is considered rejected, and the State would not make the offer again. . . . . Plea Counsel did not exercise proper due diligence to render effective assistance of counsel in communicating the formal plea offer to Applicant prior to lapse/expiration of the formal plea offer date.  With proper due diligence and effective assistance of counsel, Plea Counsel would have known that Applicant was incarcerated within the South Carolina Department of Corrections.  Applicant was not informed of the formal plea offer until after it expired.  Applicant was prejudiced by this failure of Plea Counsel to timely communicate the formal plea offer because: Applicant's formal plea offer was on terms and conditions that were favorable to the Applicant . . . .

(ECF No. 7-1 at 118.)  After conducting an evidentiary hearing, the PCR court filed an order rejecting Petitioner's claims and denying his PCR application with prejudice.  (*Id.* at 225–26.) Petitioner appealed the PCR court's decision to the South Carolina Court of Appeals (ECF No. 7-2), and upon dismissal (ECF No. 7-3), filed a petition for writ of *certiorari* before the South Carolina Supreme Court (ECF Nos. 7-5).  The South Carolina Supreme Court transferred the

---

[1] Petitioner was also indicted for armed robbery in January 2015, but the State nolle prossed the charge when Petitioner pled guilty.

[2] Petitioner filed his initial application pro se, but later amended his application for PCR with the help of counsel J. Taylor Bell.  (ECF No. 13 at 2.)

petition to the South Carolina Court of Appeals, which subsequently denied *certiorari* on November 17, 2020.  (ECF Nos. 7-8 & 7-9.)

On December 2, 2020, Petitioner filed this Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Petitioner argues he was denied his right to effective assistance of counsel based upon the ground that "Plea [C]ounsel was constitutionally ineffective in failing to timely convey a plea offer to Petitioner and the adjudication of this claim in state court was unreasonable and contrary to federal law."  (ECF No. 1 at 6.)  Specifically, Petitioner claims:

> "Plea [C]ounsel failed to timely communicate a formal plea offer to Petitioner prior to the expiration of the offer.  The solicitor conveyed the written plea offer of 13 years[] and required Petitioner to enter a plea before March 2014.  Plea [C]ounsel received this offer in January.  Plea [C]ounsel mailed the written offer to a street address, though [Petitioner] was in state custody at the time, and [Petitioner] never resided at the address in question during the pendency of his charges.  Plea [C]ounsel failed to act with reasonable diligence to ensure that the offer was conveyed to Petitioner prior to its expiration.  The offer expired before Petitioner had a chance to consider it."

(*Id.* at 6.)

On January 7, 2021, Respondent filed his Return and Motion for Summary Judgment. (ECF Nos. 7 & 8.)  Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment on February 22, 2021.  (ECF No. 11.)  Respondent filed a Reply on March 1, 2021. (ECF No. 12.)

Both parties agree that on January 9, 2014, the State conveyed a written letter to Plea Counsel offering Petitioner a thirteen (13) year sentence of imprisonment in exchange for a guilty plea for kidnapping (the "13-year plea offer").  (ECF No. 7 at 13; ECF No. 11 at 4.)  The letter did not require Petitioner to cooperate with the prosecution as a condition of the plea.  (ECF No. 7-1 at 176.)  It stated explicitly that if Petitioner failed to accept the plea offer by February 28, 2014, it would be "considered rejected and the State [would] not make the offer again."  (*Id.* at 214.) Neglecting to update Petitioner's file with his current place of incarceration, Plea Counsel mailed

the letter to Petitioner at his pre-incarceration address.  (ECF No. 7-1 at 174-75.)  Plea Counsel took responsibility for this mistake.  (*Id.*) The parties allege different versions of the events that followed.

In his testimony before the PCR Court, Plea Counsel admitted he did not meet with Petitioner prior to the plea offer's expiration on February 28, 2014.  (*Id.* at 155.)   He claimed, however, that his verbal discussions with the prosecution before that date indicated the plea offer would not expire on February 28, 2014 and would instead remain open "for the foreseeable future" because the State was "very interested in [Petitioner] being a cooperating witness." (*Id.* at 176, 188 (explaining the prosecution indicated to Plea Counsel the deadline was not "hard").)  Still, Plea Counsel admitted that it was ultimately up to the prosecution whether they wanted to honor that deadline.  (*Id.* at 190-91.)

Plea Counsel confirmed that he discussed the plea offer with Petitioner for the first time on July 30, 2014, well after the plea offer's purported expiration date.  (*Id.* at 156.)  According to Plea Counsel's testimony, Petitioner rejected the offer in July 2014 and in various meetings thereafter, including in October 2014, January 2015, and March 2015 (*Id.* at 156-158.)  Plea Counsel was adamant that he discussed the 13-year plea offer with Petitioner numerous times and kept written notes of the substance of these meetings.  (*Id.* at 186.)  Each time, Petitioner insisted upon his innocence of the charges.  (*Id.* at 156-57.) However, no written notes or record of these meetings were presented at the PCR Hearing.  Plea Counsel conceded that nothing in the written record indicated Petitioner had rejected the 13-year plea offer.  (*Id.* at 178-180.) He explained that he believed the effect of rejecting a written plea on paper was to "cut off further negotiations" and "box[] in" the defense. (*Id.* at 179.) He conceded Petitioner was never arraigned. (*Id.* at 159, 180.) Nonetheless, he testified that Petitioner verbally declined the 13-year plea offer multiple times.

(*Id.* at 156-58.) Throughout this time, Plea Counsel believed the offer remained on the table, based on his experience as a defense attorney in the circuit. (*Id.* at 177-78.)

As the date of trial approached, Plea Counsel recounted that Petitioner asked for several lesser plea terms,[3] which were rejected by the prosecution. (*Id.* at 157.) Notably, Plea Counsel reported that as late as March 31, 2015, Petitioner indicated he would be willing to plead guilty in exchange for a ten-year term of imprisonment. (*Id.* at 158.) The prosecution, however, was not interested in his offer. (*Id.*) At this point, Plea Counsel still believed the 13-year plea offer remained available. (*Id.* at 158-59.) But after receiving notice of an incriminating interview by a codefendant on the eve of trial,[4] Plea Counsel testified the prosecution rejected his request to keep the 13-year plea open. (*Id.* at 159.) By April 2, 2015, Petitioner's case was on a "trial roster," and the 13-year plea offer had indisputably expired. (*Id.* at 159.) But Petitioner was still not interested in a plea deal for 13 years of imprisonment. (*Id.*)

Disregarding Petitioner's unwillingness to accept the offer, Plea Counsel recounted that he filed a pretrial motion to reinstate the now-expired 13-year plea based upon the late receipt of some incriminating discovery. (*Id.*) He testified that by reopening the plea, he also hoped to "keep [Petitioner's] options open," given his experience that "clients often change their minds at the last minute" (*Id.* at 181) and "protect himself" if Petitioner decided he wanted to accept the 13-year deal after all (*Id.* at 186). In the end, the motion was denied. (*Id.* at 160.) And shortly thereafter, when a co-defendant indicated his willingness to plead guilty, Petitioner decided to do the same. (*Id.* at 162.) At this point, Plea Counsel explained he would have advised Petitioner to proceed to

---

[3] These included pleas for five and ten years. (*Id.* at 157-58.)

[4] Plea Counsel testified he received this information "within maybe 10 days or so of trial." (*Id.* at 160.)

trial, given the unlikelihood of obtaining a favorable plea bargain even close to the original 13-year offer.  (*Id.* at 162-63.) But ultimately, he accepted what was Petitioner's decision alone. (*Id.* at 163.)

Petitioner's testimony at the PCR hearing confirmed he had only learned of the offer in July 2014, after its purported expiration.  He contradicted Plea Counsel's testimony and emphasized that upon learning of the plea offer, he wanted to accept the deal.  He further testified that had he "known about the [13-year] plea offer while it was still open, [he] would have accepted it." (*Id.* at 147.)  Petitioner recounted that it was him who asked Plea Counsel to reinstate the offer. (*Id.* at 148.)  On cross-examination, Petitioner testified that Plea Counsel had never communicated any other plea offers to him, other than the 13-year offer which was set to expire in February (*Id.*at 152.)

After the parties concluded argument, the PCR Court found Petitioner:

"failed to show by a preponderance of the evidence - - he has not met his burden to show that this offer was closed, that he did not have the opportunity to exercise it.  Trial counsel has testified that he offered it to him successively afterwards, that it was extended by the solicitor's office.  There is no rule of court, that I am aware of that says that these offers are ended, that there would be any reasons why the solicitor could not extend the time.  Quite frankly, the Court - - I've practiced law for 32 years, I know the practice in this circuit, that's routinely done.  I think that he has failed to meet his burden and I would deny the petition.
. . . .
I would - - and let me say, I do make those findings and I do make a comment about the Court's awareness of the practice, but even so, negating that, disregarding that totally, I still find that [Plea Counsel's] testimony is compelling.

(*Id.* at 207.)

Subsequently, the PCR Court issued a written order denying Petitioner's application on several grounds.  (*Id.* at 225 – 26.) Specifically, the PCR Court found Plea Counsel was not ineffective in failing to timely communicate the 13-year plea offer.  (*Id.* at 222-24.) Deeming Plea Counsel's "testimony broadly credible and [Petitioner's] testimony not credible," the PCR court

6

found the 13-year plea offer "was kept open by the State after the written expiration date, communicated to [Petitioner] orally, and repeatedly rejected." (*Id.* at 224.) The court concluded Petitioner could have accepted the 13-year plea offer but failed to do so on his own accord. (*Id.*) The court rejected Petitioner's argument that the State could have reneged on the 13-year plea offer after the purported expiration date, as mere speculation.   Crediting Plea Counsel's "articulated judgment that such duplicity would not have occurred had Petitioner accepted the offer," the PCR Court concluded Petitioner had not met his burden on this issue.[5] Petitioner subsequently filed a motion to reconsider, which was denied. (*Id.* at 233-36.)  The order denying the motion noted that Plea Counsel's testimony was credible in part because it was consistent with the PCR Court's own "experience in and observation of judicial matters in the circuit," provided "thorough and concise in detail as to the course of Counsel's representation," because it was delivered in a "comfortable, unwavering, consistent, and forthright" manner. (*Id.* at 234.) The court explained Petitioner's "limited testimony as to his desire for the plea offer was self-serving, inconsistent with the [PCR Court's] experience in and observation of judicial matters in the circuit, and his testimony was generally presented in a character and manner unconvincing to the fact-finder." (*Id.*)

The Magistrate Judge issued the Report on April 15, 2021, recommending that the court grant Respondent's Motion for Summary Judgment. (ECF No. 13 at 1.) The Report notified both parties of their right to object to its findings. (*Id.* at 31.) Petitioner filed an Objection to the Report

---

[5] The PCR Court also considered Petitioner's claim that Plea Counsel was ineffective due to his failure to obtain independent forensic testing of physical evidence found at the scene.  The court does not address Petitioner's argument on this ground because it has not been raised in the Petition at bar.  (*See* ECF No. 1 at 6-9.)

on April 29, 2021 (ECF No. 14), to which Respondent filed a Reply (ECF No. 15).  Respondent did not file a separate objection.

## II.    JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 2254, which provides that a federal district court has jurisdiction to entertain a § 2254 petition when the petitioner is "in custody pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

## III.    LEGAL STANDARD

### A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed and reviews those portions which are not objected to–including those portions to which only "general and conclusory" objections have been made–for clear error.  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

### B.    Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating that summary judgment is

appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party to avoid summary judgment. *See Id.* at 248.

**C.**    **Petitions for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254**

State prisoners have a statutory right to seek *habeas* relief in federal courts. *See* 28 U.S.C. § 2254(a). However, a court's review of a § 2254 petition filed after April 24, 1996, is limited by provisions of The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (codified as amended in scattered sections of 28 U.S.C.). Under the AEDPA, Federal courts may not thereafter grant habeas corpus relief unless the underlying state adjudication comports with § 2254(d), which provides:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-(1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established Federal law,* as determined by the Supreme Court of the United States; or (2) *resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.*

28 U.S.C. § 2254(d) (emphasis added).

9

A state court's decision is contrary to clearly established federal law where it "applies a rule that contradicts the governing law set forth" by the United States Supreme Court or confronts facts essentially indistinguishable from a prior Supreme Court decision and "nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000). In contrast, a state court's decision involves an "unreasonable application" of "clearly established" federal law 1) "if the state court identifies the correct governing legal rule from this [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case" or 2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

In line with *Williams,* the Fourth Circuit has noted that an "unreasonable application" is not necessarily an "incorrect application" of federal law, explaining that "an incorrect application of federal law is not, in all instances, objectively unreasonable." *Humphries v. Ozmint,* 397 F.3d 206, 216 (4th Cir. 2005) (citing *Williams,* 529 U.S. at 413). Thus, to grant a habeas petition, a federal court must determine that the state courts' adjudication of a petitioner's claims was "not only incorrect, but that it was objectively unreasonable." *McHone v. Polk,* 392 F.3d 691, 719 (4th Cir. 2004).

In making this determination, a federal court's habeas review focuses on the state court decision that already addressed the claims, not "the petitioner's free-standing claims themselves." *McLee v. Angelone,* 967 F. Supp. 152, 156 (E.D.Va. 1997), *appeal dismissed,* 139 F.3d 891 (4th Cir.1998). A state court's factual determination is presumed to be correct, and a petitioner who brings a habeas petition in federal court must rebut facts relied upon by the state court with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Cagle v. Branker,* 520 F.3d 320, 324 (4th Cir.

2008) ("[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." (citing 28 U.S.C. § 2254(e)(1))).

## IV.     ANALYSIS

### A.     The Report and Recommendation

In the Report, the Magistrate Judge suggests summary judgment is appropriate because Petitioner has failed to demonstrate that he is entitled to relief.  First, the Magistrate Judge explains that to prove ineffective assistance of counsel, Petitioner must show (1) that his attorney's performance fell below an objective standard of reasonableness, and (2) but for the deficient performance, the outcome of the proceedings would have been different.  (ECF No. 13 at 14 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984).)

The Magistrate Judge characterizes the basis of Petitioner's *habeas* claim as asking "this court to review the same record as the PCR Court but find Petitioner's testimony more credible than Plea Counsel's." (*Id.* at 24.)  Citing the § 2254 requirement mandating "deference the PCR Court's assessment of the evidence before it unless . . . [it] is clearly unreasonable," the Magistrate Judge rejects Petitioner's argument.  (*Id.* at 25.) The Report emphasizes that "the PCR Court's credibility determinations find at least "some" support in the record and are entitled to deference. (*Id.* (citing *Merzbacher v. Shearin*, 706 F.3d 356, 369 (4th Cir. 2013).) Moreover, it highlights that the PCR Court cited multiple factors for discounting Petitioner's testimony relative to that of Plea Counsel's, and properly made credibility determinations based on the "way" the evidence and testimony was presented.  Specifically, the Magistrate Judge discusses how:

> "Plea Counsel had notes from his representation and testified in detail regarding each meeting with Petitioner and conversation with the solicitor . . . . Plea Counsel provided specific dates, the context of each meeting, Petitioner's position on accepting a plea at each stage, and Plea Counsel's own thoughts on the state of Petitioner's case leading up to a possible trial."

11

(ECF No. 23 at 26.)   The Magistrate Judge further finds the PCR Court properly applied *Strickland*'s deferential standard in presuming counsel's representation was reasonable.  (*Id.* at 28.)

The Report rejects Petitioner's argument that the PCR Court's reliance on extra record evidence was substantial enough to justify a finding of unreasonableness. (*Id.* at 29.) Specifically, the PCR Court's reliance on its own understanding and experience with the plea-bargaining process was neither "heavy and improper," nor "highly prejudicial." (*Id.* at 28-29.) Finally, the Report concludes the PCR Court's decision was not "an unreasonable application of clearly established federal law." While Plea Counsel had a duty to communicate formal plea offers to Petitioner, the PCR Court's findings of fact underscored that he did so on numerous occasions. (*Id.* at 29.) Under these facts, the Magistrate Judge determined that Plea Counsel was not ineffective under *Strickland*. (*Id.*)

## B.   **Petitioner's Objections**

Petitioner makes several objections to the Magistrate Judge's Report.  First, Petitioner objects to the Report's factual determinations that Plea Counsel moved to reinstate the 13-year plea offer because the prosecution turned over late discovery (ECF No. 14 at 1), and that "despite the written deadline. . . solicitors in [this] circuit keep offers open until the case is set for trial" (*Id.* at 2.)

Petitioner also argues that contrary to the Report's findings, he does not ask the court to "review the same record as the PCR Court but find Petitioner's testimony more credible than Plea Counsel's." (*Id.* (citing ECF No. 13 at 24).) Rather, Petitioner argues "it was unreasonable for the PCR court to credit plea counsel's testimony" under the totality of the circumstances, including Petitioner's own testimony, Plea Counsel's failure to mail the letter to the correct address before

the plea offer expired, and the lack of any written evidence that Petitioner rejected the plea offer. (*Id.* at 3.) In effect, Petitioner objects that the PCR Court's findings amounted to an unreasonable determination of the facts. (*Id.*)

Petitioner takes issue with the Report's finding that Plea Counsel's concession of errors in his representation bolstered the credibility of his testimony. (*Id.* at 4.) Petitioner argues Plea Counsel never made such a broad admission of errors. (*Id.*) Instead, Petitioner contends Plea Counsel only conceded his failure to mail the plea offer letter to the correct address. (*Id.*) Notably, Petitioner argues Plea Counsel never conceded error in allowing the plea offer to lapse. (*Id.*)

Finally, Petitioner objects to the Report's finding that he failed to meet his burden in showing the PCR Court's credibility findings were objectively unreasonable. (*Id.* at 4-5.) Petitioner emphasizes that the totality of the evidence, including Plea Counsel and Petitioner's testimony, the lapse of the plea offer, and the "lack of contemporaneous proof of Petitioner's alleged rejection of the State's offer" indicate the PCR Court's factual determinations were objectively unreasonable. (*Id.*) At bottom, Petitioner argues the PCR Court's findings are not entitled to deference here. (*Id.*)

## C.     <u>The Court's Review</u>

Two provisions under Antiterrorism and Effective Death Penalty Act ("AEDPA") regulate the level of deference a federal habeas court must afford to a state court's findings of fact. Section 2254(d) permits federal *habeas* relief where the state court's adjudication "involved an unreasonable application of clearly established Federal law," § 2254(d)(1), or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). *See Elmore v. Ozmint*, 661 F.3d 783, 850 (4th Cir. 2011), *as amended* (Dec. 12, 2012).

Section 2254(e)(1) arguably applies an "even more deferential standard," demanding that "a determination of a factual issue made by a State court shall be presumed to be correct," and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Elmore*, 661 F.3d at 850 (quoting *Wood v. Allen,* 558 U.S. 290, 297 (2010)). The United States Court of Appeals for the Fourth Circuit has determined that "the § 2254(e)(1) standard has a place in § 2254(d)(2) review." *Id.* Thus, a federal court must "consider whether the state PCR court based its decisions 'on an objectively unreasonable factual determination in view of the evidence before it, bearing in mind that factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.'" *Id.* (quoting *Baum v. Rushton*, 572 F.3d 198, 210 (4th Cir.2009)). AEDPA therefore requires the greatest degree of deference for a state court's findings of fact. *Id.* This requirement is especially forceful when these facts involve matters of credibility. *See Id.; Marshall v. Lomberger*, 459 U.S. 422, 434 (1983) ("Federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")

Here, the PCR Court's conclusions involve pure questions of fact. While some courts have characterized ineffective assistance of counsel determinations as "mixed questions of law and fact,"[6] this case presents a simpler issue: Petitioner claims that he never rejected the 13-year plea offer on one hand, and on the other, Plea Counsel's conflicting testimony that Petitioner rejected

---

[6] *See, e.g. Strickland v. Washington*, 466 U.S. 668, 698 (1984) ("Finally, in a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U. S. C. § 2254(d). Ineffectiveness is not a question of "basic, primary, or historical [fact]," *Townsend* v. *Sain*, 372 U.S. 293, 309, n. 6 (1963). Rather, like the question whether multiple representation in a particular case gave rise to a conflict of interest, it is a mixed question of law and fact. See *Cuyler* v. *Sullivan*, 446 U.S., at 342.").

the offer multiple times up until the date of trial. If Plea Counsel never communicated the plea offer and let it expire, *Missouri v. Frye*, 566 U.S. 134 (2012) could support a finding of ineffectiveness. If Petitioner could have accepted the offer but failed to do so on his own accord or because he hoped to proceed to trial until his co-defendants' desire to take a plea changed his mind, *Frye* does not support such a finding. Thus, the outcome turns squarely on the credibility of conflicting testimony. This distinguishes the case from *Frye*, where counsel's failure to communicate the plea offer was undisputed. *Frye*, 566 U.S. at 138-39. Faced with a swearing battle between Petitioner and Plea Counsel, the PCR Court considered testimonial and documentary evidence and found Plea Counsel more credible overall. And under § 2254(e)(1), this court must presume this determination to be correct. Petitioner's only recourse is to prove, by clear and convincing evidence, that the determination was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Rice v. Collins,* 546 U.S. 333, 338 (2006).

Different courts have developed different analyses of what constitutes an unreasonable determination of the facts. For example, a factual determination may be unreasonable where "the fact-finding process itself . . . was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d. 1140, 1146 (citing *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004) *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014)). Such a challenge "may be based on the claim that the finding is unsupported by sufficient evidence, . . . that the process employed by the state court is defective, . . . or that no finding was made by the state court at all." *Taylor*, 366 F.3d at 999 (citations omitted).

Where a state court held an evidentiary hearing without obvious procedural error and considered the testimony before it, the demeanor of the witnesses, and the totality of the evidence

before concluding which side to ultimately credit, federal courts will generally defer to its findings. In *McLeod v. Peguese*, the Fourth Circuit found the state court "witnessed first-hand the testimony of [multiple] witnesses" and "provide[d] a thorough review of that testimony" in a detailed statement of reasons. *McLeod v. Peguese*, 337 F.App'x 316, 332 (4th Cir. 2009). "In deeming [one] the more credible witness, the [state] court did not act unreasonably, let alone commit 'stark and clear error.'" *Id.* Consequently, the court found that "the presumption of correctness mandated by § 2254(e)(1) stands unrebutted." *Id.*

Where state courts made objective errors of fact based on the record before them, however, courts have found their factual determinations to be unreasonable. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 512 (finding that where the state court concluded "social services records revealed incidences of sexual abuse when in fact they did not[,] reflect[ed] "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.") (citing 28 U.S.C. § 2254(d)(2)).

Similarly, the United States Court of Appeals for the Ninth Circuit determined a state court acted unreasonably in finding a jailhouse informant's testimony credible, when it was undisputed the informant had perjured himself at the petitioner's trial numerous times, misrepresented his deal with the prosecution, and lied about his motivation for coming forward and his sophisticated history as a jailhouse informant. *Maxwell v. Roe*, 628 F.3d 486, 500-04 (9th Cir. 2010). The informant's general willingness to lie under oath was confirmed by multiple testifying witnesses, including district attorneys who had declined to use his testimony in other cases. *Id.* at 502-03. Under these circumstances, the court found the "state court's conclusion that [the informant] testified truthfully was an unreasonable determination of the facts. . . There is simply too much evidence of [his] pattern of perjury to conclude otherwise." *Id.* at 505.

16

The state court's failure to "consider or even acknowledge" the "highly corroborative" testimony of a witness "compelled the conclusion that [its] decisions were based on an unreasonable determination of the facts" in *Taylor v. Maddox*, 366 F.3d 992, 1005 (9th Cir. 2004), *abrogated on other grounds*, *Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014). *Taylor* involved an involuntary confession. There was no basis to discredit the witness, an attorney with no motive on the record to lie for the petitioner. *Id.* at 1005, 1009-10. The record indicated the witness corroborated the petitioner's testimony, providing more detail than even the petitioner could remember. *Id.* at 1005-06. On review, the Ninth Circuit determined that a "rational fact-finder might discount [] or, conceivably, find [the testimony] incredible, but no rational fact-finder would simply ignore it. Yet this is precisely what the state courts did in [the petitioner's] case." *Id.* at 1006–07. The court concluded that "[f]ailure to consider key aspects of the record is a defect in the fact-finding process" that warranted a finding of unreasonableness under § 2254(d)(2). *Id.* at 1008.

In the instant case, the alleged failure of the PCR Court's fact-finding process comes nowhere close to these examples. Petitioner objects that it was improper for the Magistrate Judge to determine that Petitioner "essentially asks this court to review the same record as the PCR Court, but find Petitioner's testimony more credible." (ECF No. 14 at 2.) But this is precisely what Petitioner demands. Specifically, Petitioner asks us to consider Plea Counsel's testimony along with all the other evidence before the PCR Court and determine that it was unreasonable to credit Plea Counsel's testimony under the circumstances. (*Id.*) But Petitioner fails to demonstrate *any* weighty inconsistencies and factual errors that would require us to discredit the PCR Court's findings. Petitioner does not show, for instance, that the PCR Court made concrete errors of fact as in *Wiggins*, 539 U.S. 510, or ignored substantial testimony, either testimonial and documentary,

17

that Plea Counsel was not a credible witness, *see Maxwell*, 628 F.3d at 500-04, or entirely ignored highly probative testimony from a trustworthy witness with a substantial basis of knowledge, *see Taylor*, 366 F.3d 1005-10.   While these are not the only circumstances where a state court's findings of facts may be deemed unreasonable, Petitioner must demonstrate some other, similarly egregious failure in the PCR Court's fact-finding process.

The inconsistencies to which Petitioner's Objection refers, including the lack of written evidence of his rejection of the plea offer and the fact that the 13-year plea offer did not require cooperation despite Plea Counsel's statement at the plea hearing that Petitioner's "only reluctance to plea was due to his concerns about cooperating with the State" (ECF No. 14 at 3), are relatively minor ones which the finder of fact is entitled to resolve based on its observation of the witnesses and consideration of whole record.  Here, the PCR Court considered conflicting and inconsistent witnesses and made its credibility determinations based on the "comfortable, unwavering, consistent and forthright character of Plea Counsel's testimony," (ECF No. 7-1 at 234.) This does not amount to "stark and clear error" by any means.  *McLeod*, 337 F.App'x at 332. Overall, Petitioner fails to contradict the Report's accurate finding that the PCR Court's conclusion enjoyed "at least some support in the record." (ECF No. 13 at 25 (citing *Merzbacher v. Shearin*, 706 F.3d 356, 369 (4th Cir. 2013).)

To the extent Petitioner argues that the basis for discrediting the PCR Court's findings of fact is Plea Counsel's failure to introduce his written notes from meetings with the Petitioner, the court again finds that Petitioner has not made a sufficient showing of unreasonableness.  Plea Counsel testified that he kept notes of all his meetings with Petitioner and reviewed his notes prior to the evidentiary hearing.  He referred to their content throughout his testimony.  (*See, e.g.*, ECF No. 7-1 at 153, 156, 159, 186.)  He was able to recall details of numerous meetings with Petitioner

over several months. (*Id.*) And he testified how, as late as April 8, 2015 and only a few days before

trial, these notes indicated Petitioner "will not take 13 years even if it were back on the table." (*Id.*

at 159.)   Nothing requires the PCR Court to ask for the physical notes before crediting Plea

Counsel's detailed and consistent testimony as to their contents.   Therefore, Petitioner has not

shown by clear and convincing evidence that the PCR Court's credibility findings on this ground

were in error.

Petitioner's remaining objections largely challenge the Magistrate Judge's representation

of the facts of the case.   Specifically, Petitioner argues (1) the Report improperly stated that the

reason for Plea Counsel's Motion to reinstate the 13-year plea offer was due to late discovery

supplied by the prosecution"; (2) that solicitors in the circuit where Petitioner was charged

typically keep plea offers open beyond the written deadline; and (3) the Report wrongly assumed

the Plea Counsel made a broad admission of errors in the case.   (ECF No. 14 at 1-4.) Petitioner's

argument is rooted in the notion that this characterization of the facts will confound the court's

review of the PCR Court's findings.   These portions of the Report, however, merely describe the

facts as the PCR Court found them.[7] This court must defer to these factual findings.   And in either

case, these facts do not provide the basis for the court's decision today.   The court's decision rests

instead on the relevant standard of review – the explicit commands of § 2254(d)(2) and §

2254(e)(1).   In each case, the court concludes that the PCR Court's factual findings on these issues

---

[7] Considering an assertion that the PCR Court failed to "weigh relevant evidence that was properly presented . . .  and made part of [its] record," the court emphasizes the PCR Court is not obliged to "address every jot and tittle of proof suggested to them, nor "make detailed findings addressing all the evidence before [them]." *Taylor*, 366 F.3d at 1001 (citing *Miller–El,* 537 U.S. at 347.) Instead, the overlooked evidence must have substantial importance to Petitioner's argument when considered in "context of the full record." *Id.*

enjoyed requisite support from the record, which Petitioner did not overcome.[8] Thus, the court finds no clear error on the face of the record and denies Petitioner's Objection (ECF No 14).

## V.     CONCLUSION

For the reasons set forth above, the court **ACCEPTS** the Report and Recommendation (ECF No. 13), **GRANTS** Respondent's Motion for Summary Judgment (ECF No. 8) and **DISMISSES** Petitioner's Habeas Petition (ECF No. 1) with prejudice.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 536 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, the court **DECLINES** to grant a certificate of appealability.

**IT IS SO ORDERED.**

---

[8] Petitioner's objection that the Report's mischaracterized Petitioner's testimony as "self-serving" (ECF No. 14 at 3) misses the mark. While *Merzbacher*, 706 F.3d at 367 and *United States v. Day*, 969 F.2d 39, 46 n. 9 (3rd Cir. 1992) (referring to defendants' desire to maximize both the "chance at acquittal" and the "chance to plead guilty if the trial defense fails" as self-serving), discuss one possible way defendant testimony may be characterized as self-serving, this surely does not encompass all the ways in which such testimony may serve a defendant's interests. Nor is this the only ground on which a finder of fact may discredit such testimony. As the Magistrate Judge explained, the PCR Court provided a detailed statement of reasons for its ultimate credibility determinations, where the self-serving nature of Petitioner's testimony was only one factor. (ECF No. 13 at 25.)

United States District Judge

September 24, 2021

Columbia, South Carolina